### JEAN GUIMBILLOT *v.* JOSEPH ABAT.

It is well settled that the ratification of a principal will be inferred from his silence,
if, when apprized of an act done by his agent without, or beyond his authority, he
does not, within a reasonable time, express his dissent ; but no such inference will
be drawn, where the act was not done in the name of the principal, nor apparently
for his benefit, and the circumstances of the case sufficiently account for the silence
of the principal without construing it as an acquiescence in the act.

Where a third person attempts to establish the ratification of an unauthorized act of
an agent, from the silence, or conduct of the principal, it must clearly appear that
he has been misled thereby, or induced to forego some advantage he would other-
wise have enjoyed.

   APPEAL from the Parish Court of New Orleans, *Maurian*, J.
*Barthe* and *Benjamin*, for the plaintiff.  ·
*D. Seghers* and *Eustis*, for the appellant.

---

   MORPHY, J.   The material facts in relation to this controversy are the following.  In March, 1840, the plaintiff, having borrowed fifty thousand francs from Maurice Abat in France, agreed to give him in pledge, and to place in the hands of Joseph Abat, his brother, at New Orleans, a note of $21,800, drawn by Joseph Girod, to the order of, and endorsed by Nicolas Girod, which note was the property of the plaintiff, and had been left by him in the hands of P. J. Tricou, his agent in this city.   In execution of this agreement, the plaintiff directed his agent here to deliver the note to the defendant ; but it had already been pledged to the latter by P. J. Tricou, to secure a personal debt of his own, amounting to $6900, as appears by a receipt, or acknowledgment, executed by Joseph Abat, under private signature, on the 24th of January, 1840.   The plaintiff now seeks to recover the note in question, on paying to Maurice Abat, the debt for which it has been pledged to the latter ; while, on the other hand, the defendant claims to be paid out of the proceeds of the note the $6900 lent to Tricou.   By agreement between the parties, the note was deposited in the hands of Maurice Abat, who, when he returned to France, left it with L. Garnier, his agent here, to remain subject to the rights of all the parties.   There was a judgment below in favor of the plaintiff ; and the defendant has appealed.

The evidence shows, and it has not been denied, that the note for $21,800, is the property of Guimbillot, and that the defendant was aware of the fact when he received it from Tricou, who, moreover, endorsed it as the plaintiff's agent.   It further appears from the procuration, that Tricou had the power of endorsing in the name of Guimbillot only to a certain extent, in certain banks, and in favor of certain persons ; that he had no power or authority to borrow money, or to pledge notes in the name of Guimbillot, and still less to pledge notes belonging to the latter, to secure his (Tricou's) personal debts.   The defendant was then fully aware that Tricou had no right to appropriate this note to his own use, and that, therefore, the pretended pledge could give him no rights whatever.   But it has been most strenuously contended that, admitting this to be so, yet, as the plaintiff did not immediately express his dissent, when apprized of the pledge made of this note by his agent, he must in law be held to have ratified it.

Nothing is better settled than the doctrine, that the ratification of a principal will be inferred from his silence, if, when apprized of an act done by his agent without his authority, or beyond his authority, he does not, within a reasonable time, express his dissent. But while we readily admit the soundness of the doctrine contended for, we hold it to be altogether inapplicable to the circumstances of this case. The pledge in question was not made in the name of Guimbillot, nor apparently for his advantage, but in the name and for the avowed benefit of his agent; and the plaintiff was directly apprized of the transaction, neither by Tricou, nor by the defendant. The only notice or information in relation to it, which the plaintiff ever received, reached him through a correspondence between the defendant and Maurice Abat, which was communicated to him by the latter. On the 15th of March, 1840, Maurice Abat wrote to the defendant, informing him of his loan of fifty thousand francs to the plaintiff, on the note of Joseph Girod, which was to be placed in defendant's hands as a pledge for such loan, and requesting him to call on Tricou for the note, in case it had not already been handed to him, pursuant to the plaintiffs' instructions. On the 26th of September following, Maurice Abat writes to the plaintiff then in Paris, and tells him that he has just received from his brother, Joseph Abat, a letter bearing date the fifth of August, and of which he gives an extract touching his note of $21,800, in the following words, to wit:

"*Mon Cher Frère :—"J'ai reçu dans le tems ta lettre, avec copie de celle de Guimbillot. Je fis part à Tricou de ses dispositions, et il s'empresse de répondre qu'il m'avait remis le billet en question. La vérité est, que le billet de $21,800, se trouve engagé entre mes mains pour une somme de $6,900, ce qui laisse de la marge pour les 50,000 francs que tu as prêtés. Je dois te dire de plus, qu'il m'a promis de payer cette dernière somme sur la première vente qu'il fera. Il lui tient à cœur, à ce qu'il paraît, de dégager ce dépôt. J'ai attendu quelque tems pour te répondre, Tricou m'ayant fait espérer de libérer cette affaire. Je ne pense pas que tu aies le moindre risque à courir.*

"Comme Guimbillot pourrait être inquiet, je pense que les renseignemens que je te donne sont plus que rassurants."

Maurice Abat concludes his letter by saying :—"*D'après la*

*lettre de mon frère*, Tricou lui paiera sous peu les $6,900, *et alors votre billet sera entre les mains de mon frère comme nous en sommes convenus.* Soyez tranquille. J'aurai le soin d'écrire à Joseph pour que cette affaire se termine à votre convenance."

This letter of the defendant communicated to Guimbillot through Maurice Abat, whom he had made his agent for such communication, coupled with Maurice Abat's promise to write to his brother, so that the business might be arranged to his satisfaction, (*à votre convenance*,) sufficiently accounts for the silence of Guimbillot. Living in a foreign country, he seems to have relied on the assurances given him by both brothers, that he might be easy, and that Tricou would pay his debt. Hearing nothing more about the matter, he naturally supposed every thing settled as he was promised that it should be ; and it would be most unjust and unreasonable to construe his silence into an acquiescence in, or approval of the unauthorized conduct of Tricou. He returned to this country with Maurice Abat, in November, 1842, and brought the present suit in December following. Some stress has been laid on a declaration made by the plaintiff, in a conversation with Maurice Abat, after his return, that he would have to lose his money. It may betray his ignorance of his rights, or his fear of incurring a loss, but by no means implies any ratification of the tortious act of his agent. When the ratification of an unauthorized act of an agent, is sought to be inferred from the silence, or conduct of his principal, in favor of a third person, it must clearly appear that the latter might have been thereby misled, and induced to forego some advantage he would otherwise have enjoyed. In the present case, the defendant knew of, and participated in Tricou's illegal act of conversion. Far from being misled by the plaintiff, he induced the latter to expect that he would get Tricou to refund the money lent to him. Instead of attempting to do so, he went on renewing the notes of Tricou, from time to time, until they were finally protested, in August, 1842.

*Judgment affirmed.*