## No. 6296.

### WOODS, SLAYBACK & CO. VS. JOHN ROCCHI.

Where a party buys certain merchandise through the agency of a broker, who falsely represents the price to be less than the vendor agreed to sell for, and before the delivery of the whole of the merchandise, a notice of the real price is brought home to the buyer, he will be held to have ratified the contract made by the broker if he received the balance of the merchandise without repudiating the contract.

In a contract of sale the vendee cannot profit by a negligence of the vendor when he himself is guilty of an equal negligence.

A seller who gives a clear statement of the terms of the sale to the broker of the buyer, is not responsible for the latter's ignorance of those terms, arising out of the fault of the broker in not promptly delivering the statement to the buyer.

A broker is the agent of him who employs him originally, and only becomes the agent of the other party when the bargain between the principals is definitely settled.

APPEAL from the Fourth District Court, parish of Orleans. *Lynch,* J.

*Kennard, Howe & Prentiss* for plaintiffs and appellants.

*J. Ad. Rozier* for defendant and appellee.

---

Kennard, Howe & Prentiss, for plaintiffs and appellants, contended :
First—That one notified that a contract has been made for him, subject to his ratification, by another *pretending* to have authority, will be presumed to have ratified, unless he repudiate it immediately. Hennen's Digest, page 838, No. 11 ; 11 L. 288 ; 2 Rob. 1 ; 6 Rob. 284; 12 A. 159.

Second—That in the absence of any Code of Commerce, we follow the law merchant. 4 A. 206; 6 A. 781; 2 R. 124; Hennen's Digest, volume 1, page 795.

So that the rule laid down in Story on Agency, section 31, being the law merchant, *is* law here. He says that the broker is "primarily the agent of him who employs him *originally*, and he becomes the agent of the other party *only* when the bargain or contract is definitively settled as to its terms between the. *principals*."

Third—That the loss must fall on Rocchi, who by his action or inaction helped to cause it, and·by first employing Schexnailder as his broker, put it in the power of Schexnailder to do what he did. Walker vs. Cassaway, 4 A. 19 ; Bell vs. Keefe, 13 A. 524, 525 ; Lieuteaud vs. Jeaunaud, 20 A. 327 ; Caldwell vs. Neil, 21 A. 342.

Fourth—The blame of the misunderstanding in this case must fall on the defendant, because the doubt and obscurity arose from the want of necessary explanations which he ought to have given. See C. C. 1958.

Fifth—Let us drop, for the sake of argument, all endeavor to find out which of the parties was to blame. Let us say, that the broker alone was at fault. Let us say, what cannot be denied, that plaintiffs agreed to sell at 13¾, and that defendant agreed to buy at 13. What is the result ?

Let it be remembered that it is proved that the lard charged for in the bill was all delivered to defendant, has been shipped away and cannot be returned, and that 13¾ was a low price on that day, and lard kept advancing until it was delivered.

The true solution in such a case is, that the plaintiffs are entitled to recover, under the *prayer for general relief, and the testimony of value offered and received without objection*, the market value of 13¾. Can defendant equitably object to this ? Does he wish to get our goods at less than their market value ?

" Parties are bound by testimony even on a point *not* presented by the pleadings, if not opposed, and all objections will be considered waived." 6 N. S. 86 ; 1 La. 301 ; 18 La. 321 ; 9 A. 254 ; Hennen's Digest, vol. 1, p. 493, (c.) No.·8.

" Where plaintiff sues on a *contract* for wages, evidence of their *value* as on a *quantum meruit*, if received without objection, will be considered." Coon vs. Brashear, 7 La. 269.

The rule has even been extended to a case where the unopposed oral testimony revealed the fact that there was written testimony not produced or called for. 5 A. 183 ; 20 A. 70 and 379 ; 15 A. 389 ; 17 A. 37; 12 A. 125 ; Benjamin on Sales, 2d ed. p. 69 ; 6 L. 40 ; 4 A. 39; 5 A. 549.

J. Ad. Rozier, for defendant and appellee, contended :

First—The plaintiffs appear, from their evidence and conduct in this transaction, to have been very neglectful in several respects. Had they followed the usual course of business, they would have required a bought and sold note. Story on Agency, ₴ 28, p. 25. Instead of this, they contented themselves with a simple memorandum, signed alone by the broker. It was incumbent on them to have required a bought note, and that should have been one signed by Rocchi, and they should have furnished the latter with a sold note, for then the door would have been closed to any dispute as to the price. Not having complied with the usages in that respect referred to by the witnesses, or with the rule of law just quoted, the plaintiffs have nobody to blame but themselves, especially in the heavy transaction which is now engaging our attention.

A broker has only a special authority, not a general one ; and if you employ the broker to buy one kind of goods and he buys another, you are not bound. Addis on Contracts, vol. 2, p. 108. Principal not bound by the contract of a broker exceeding his authority. Hilliard Cont. vol. 7 ₴ 12, p. 581.

The broker or intermediary is he who is employed to negotiate a matter between two parties, and who for that reason is considered as the mandatary of both. C. C. 3017.

Second—The law, foreseeing that misunderstandings will often arise as to the terms and conditions of sales, in emphatic terms (departing from the rule laid down in the title Obligations) has provided, " that the seller is bound to explain himself *clearly* respecting the extent of his obligations." C. C. 2374. " *Any obscure or ambiguous clause is construed against him*," continues the article.

All reticence becomes suspicious. The interpretation includes, specially, all that relates to the price. See Grenier, Discours au Tribunal, 6 March, 1804, one of the legislators who framed the Code Napoleon. This doctrine, matter of legislation, is fully commented on by Merlin Rep. t. 17, v. Vente, ₴ 10 ; Pothier Obligations, No. 234 ; Troplong, Vente, No. 256; Duranton, t. 16, No. 185, and all referred to in the Digest Code Civil, Annoté, by Lahaye and others, at *verbo* Vente, page 719—being a commentary on the identical article of the Code Napoleon, 1602. Same doctrine in the Roman laws, as adopted in France and in Louisiana. Our own reports contain repetitions of this sound rule. See 4 R. 315 ; 5 Rob. 75 ; 10 R. 5 ; 2 A. 135 ; 3 A. 192 ; 4 A. 109, etc.

The opinion of the court was delivered by

Manning, C. J. This suit is for $2,479 80 and interest, balance of

account for one thousand tierces of lard at thirteen and three quarters cents per pound. The answer is a general denial.

The dispute as to liability is primarily due to the bad practice and tortuous conduct of the broker who made the purchase. It is certain that the plaintiffs sold at the price above mentioned, and it is equally certain that Rocchi supposed he was buying at thirteen cents. Schexnailder was the broker. Early in January 1875 he proposed to Rocchi to buy this large quantity of lard at thirteen cents. Rocchi called to Hamburg for instructions, and received them Jan. 6th, and accepted the broker's offer. The negotiation was closed, and the following note of purchase received by the plaintiffs ;—

"New Orleans January 22, 1875.

"Messrs. Woods, Slayback & Co., 71 Poydras St.

"*Gentlemen*—I have this day closed to John Rocchi Esq. of this city for your account one thousand tierces prime steam lard to be immediately shipped from St. Louis at thirteen and three quarters cents per lb. delivered here.

"Mr. John Rocchi binds himself to pay cash upon delivery of said lard.

"Respectfully yours,

"F. SCHEXNAILDER,

"per Thiedden."

No copy of this or duplicate was sent to Rocchi, nor did the plaintiffs know who was the purchaser until the 22d.

The lard commenced arriving February 8th, when over 500 tierces were delivered. The bill for it, charged at $13\frac{3}{4}$ cents, was delivered to the broker January 30th, but it does not appear to have been handed by him to Rocchi until February 14th. The delivery of the rest of the lard was made on the 20th, and before that day Rocchi had made payments amounting to $39,900 00. He then paid $3,106 14 which would be the balance due if the price of the lard was thirteen cents.

The testimony leaves no doubt on our minds of the good faith of both plaintiffs and defendant in the beginning of the transaction, but Rocchi had received the plaintiffs' bill, in which the price charged was $13\frac{3}{4}$ cents, as early as February 14th, and on Woods applying to him for a payment on the 16th, he turned to his desk and took out the bill, saying he observed that $13\frac{3}{4}$ cents was charged for the lard, and that he had bought at 13. Woods replied it was rather late to make such a claim. More than four hundred tierces of the lard were yet to be delivered, and Rocchi should then have declined to take them at the price charged if he did not intend to pay it. The plaintiffs never abated their price. Whatever might have been Rocchi's contract with the broker, he had then the evidence that the broker had deceived him, and that the plaintiffs

demanded the price at which they had sold, and held him bound for it. Lard had advanced. Woods says he could have sold the undelivered lard at a higher rate. If Rocchi had then and there refused to take the residue of the lard, or declared distinctly that he claimed it all at the price stipulated between him and the broker, he might be possibly in a different attitude. From the conversation of the 16th, as detailed by both parties, Woods had the right to believe that Rocchi accepted the bill then in his hands as a correct account of the purchase. The witnesses say, Schexnailder was a purchasing broker. He acted for Rocchi, who calls him on the stand his broker. He certainly was not employed by the plaintiffs. A broker is primarily the agent of him who employs him originally, and he becomes the agent of the other party only when the bargain is definitively settled as to its terms between the principals. Story's Agency 431. The contract, as actually made by the broker on behalf of Rocchi, was brought to his knowledge in ample time for him to have prevented the delivery of nearly half the goods bought. He did not repudiate the contract made for him by his agent or his pretended agent, and in law he is presumed to have ratified it. Potts v. Shubert, 11 La. 286. Bonneau v. Poydras, 2 Rob. 1. Guimbillot v. Abat, 6 Rob. 284.

The defendant's counsel insists that the plaintiffs' negligence has caused the difficulty. They should have required a "bought and sold note," but instead, contented themselves with a simple memorandum. The so-called memorandum was a formal notification of the sale, the price, and the purchaser. It has already been copied in this Opinion. The usage here is shown not to be uniform in this respect. A produce broker testifies that this is one of the forms used here. Conceding that the plaintiffs should have required a bought note at the outset, it was equally the duty of the defendant to have required a sold note, and as he was equally negligent with the others, he can take nothing on that score.

The counsel also insists that the seller is bound to explain himself clearly respecting the extent of his obligations, and any obscure or ambiguous clause is construed against him. Very true, and how could the plaintiffs have explained themselves more unambiguously than they did when they rendered a bill, before any portion of the goods were delivered, in which was set forth clearly the price charged. If the broker did not deliver that bill at once, it was not the fault of the plaintiffs, but it was delivered as we have seen, and the reticence of the defendant, and his failure at the subsequent conversation to repudiate the contract or claim its performance at his price, is construed against him.

We said at the outset that both parties were in good faith in their several negotiations with the broker. Concede that this good faith con-

tinued, and the broker was alone to blame. Rocchi received a large part of the goods after he knew there was a mistake, and sent them abroad so they cannot be reclaimed, and have been consumed by use. If he should not pay the price stipulated by the broker, he should at least pay a fair price—a price equal to the value of the goods. The proof is abundant that when both lots of lard were delivered, the article had advanced and the market value of this quality was higher than the price claimed by the plaintiffs. Both law and equity are against the defendant. Therefore

It is ordered and decreed that the judgment of the lower court is avoided and reversed, and it is now decreed that the plaintiffs have and recover of the defendant John Rocchi the sum of two thousand four hundred and seventy-nine dollars and eighty cents. with five per cent. per annum interest thereon from February 20, 1875 and costs of both courts.

Rehearing refused.